IN THE DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN MALONEY, )<br>)<br>*Plaintiff*, )<br>) NO. 23-313<br>v. )<br>)<br>ANTHONY S. ALLMAN, )<br>)<br>*Defendants*. )   **JURY TRIAL DEMANDED** | |

## COMPLAINT

Plaintiff Sean Maloney, by his attorneys at the Mizner Law Firm, files this Complaint and states:

### A. Parties

1. Mr. Sean Maloney is an adult individual who resides at 7934 Station Road, Erie, Pennsylvania, 16510.

2. Defendant Anthony S. Allman is employed by the City of Erie as a municipal police officer, with headquarters at 626 State Street, Erie, Pennsylvania 16501. At all times, Defendant Allman was acting in his capacity as a City of Erie police officer, under color of state law. Defendant Allman is being sued in his personal capacity.

3. Officer Allman joined the Erie Police Department on January 19, 2017, had previously worked at the Erie County Prison from 2009 until 2017.

### B. Jurisdiction and Venue

4. This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by

the Constitution and the laws" of the United States.

5. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

6. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendant is subject to personal jurisdiction within this District.

### C. Facts

7. Mr. Maloney is a forty-one year old Erie businessman, who is married with three daughters ages eighteen, sixteen, and fourteen.

8. Mr. Maloney owns a wholesale distribution company, as well as various rental properties.

9. In his business, Mr. Maloney is required to be very physically active, and spends significant amounts of time loading and unloading his delivery truck, as well as working on his rental units. He is also responsible for bookkeeping, meetings, sales and customer interactions.

10. At approximately 7:00 p.m. on Saturday, August 19, 2023, Mr. Maloney and his eldest daughter attended the Celebrate Erie festival in downtown Erie, to attend the Flo Rida concert.

11. The concert was to start at 8:00 p.m.

12. Mr. Maloney and his daughter met friends, and walked north on State Street, towards the main stage for the concert.

13. Flo Rida was to perform on the festival's main stage located in State Street, near

the intersection with Fourth Street. The main stage looks south on State Street, which was closed for the festival to allow pedestrians to gather in State Street for the concert and other festival activities.

14. Mr. Maloney and his daughter were two of thousands of people who gathered on State Street for the concert.

15. Mr. Maloney and his daughter walked through the crowd to a place just north of the intersection between State Street and Fifth Street, near the Happy Garden Chinese restaurant.

16. At approximately 9:00 p.m., Mr. Maloney left his daughter and her friends to use the restroom facilities one block away in the Flagship Food Hall, located on the corner of State Street and North Park Row.

17. Upon his return, he found that City of Erie Police had erected a temporary barricade across State Street, just north of the intersection with Fifth Street.

18. Mr. Maloney could not call his daughter because he did not have his cell phone, as he had intentionally locked it into his daughter's parked vehicle before walking to the concert area.

19. Mr. Maloney was very concerned that his daughter would become worried when he did not return, and that given the size of the crowd, they would lose track of one another.

20. Mr. Maloney observed a number of City of Erie police officers, who were not letting pedestrians pass the barrier, to get closer to the main stage. However, the officers were allowing pedestrians in the area between the barrier and the stage, exit the enclosed area and move south, away from the main stage.

21. Mr. Maloney realized that, due to the barrier, he would not be able to rejoin his daughter.

22. He went up to the barricade and asked the officers there what was going on, and they advised that they were not allowing anyone into the area north of the barrier, for crowd control purposes.

23. Mr. Maloney recognized a nearby officer, and asked him that he be permitted to move past the barrier, to find his daughter and have her leave the area so he could be with his daughter during the concert.

24. The officer advised that he could not permit that, and directed Mr. Maloney to speak with another officer, whom he identified as being in charge of the area.

25. Mr. Maloney approached that officer, advised that his daughter was inside the barricade, and asked if he could move past the barrier, to find his daughter and have her leave the area so he could be with his daughter during the concert. The officer in charge responded that they were not allowing more people into the area beyond the barrier.

26. He tried to explain to the officer that he had no means of telling his daughter where he was, or to ask her to exit the barrier to rejoin him. However, the officer simply maintained that he was not letting additional people into the area beyond the barrier.

27. Finally, Mr. Maloney asked that one of the officers go into the area beyond the barrier to bring back his daughter, but this request was refused as well.

28. As Mr. Maloney was still speaking with the officer in charge, he was approached from the side by Officer Allman.

29. Without speaking to Mr. Maloney, or offering him any assistance as Mr. Maloney sought help reuniting with his daughter, Officer Allman shoved Mr. Maloney away from the officer in charge.

30. In a state of shock, Mr. Maloney caught his balance, only to be shoved again by

Officer Allman.

31. In total, Officer Allman shoved Mr. Maloney several times, before swinging his right arm into Mr. Maloney's head, and knocking him to the ground.

32. At no point did Mr. Maloney attempt to physically engage Officer Allman in any way.

33. Nothing Mr. Maloney said or did was disrespectful or disruptive in any way, shape and manner and there was no justification of any nature for any type of contact, let alone excessive force, by Officer Allman.

34. Upon being struck to the ground, Mr. Maloney was in a state of shock and bewilderment, having done nothing but seek the officers' assistance in reuniting with his daughter.

35. After knocking Mr. Maloney to the ground, Officer Allman dove on top of him, straddled him on the pavement, and handcuffed him.

36. Mr. Maloney did not resist in any way.

37. Officer Allman then pulled on Mr. Maloney's wrists, apparently attempting to drag him back onto his feet.

38. However, being pulled upwards and back by his wrists in that position, made it very difficult for Mr. Maloney to get his legs underneath him to stand.

39. Therefore, after a moment, Officer Allman placed Mr. Maloney back on the pavement, face-first.

40. Officer Allman then allowed Mr. Maloney to roll to his left side, and pulled upwards on his right elbow, allowing Mr. Maloney to get on his feet.

41. Mr. Maloney was taken to the City of Erie Police Station, and placed in a holding

cell for four hours, with other men.

42. Concerned about his daughter who was still at the concert, Mr. Maloney asked if he could make a phone call. He was advised that he would be granted a phone call; however, no officer returned to the cell to allow him to call his daughter, for the entire four hours he was in the holding cell.

43. He also asked the officers if he could have some water, and the officer directed him to a small sink in the corner. When Mr. Maloney asked for a cup, the officer told him, "use your hands."

44. After spending about four hours in the holding cell, Mr. Maloney was released from the station with a non-traffic citation for disorderly conduct, at approximately 2 a.m..

45. For several days following the incident, Mr. Maloney felt mentally foggy, as if thinking were unusually difficult. He experienced memory deficits, impairment of his short-term focus, headaches and blurred vision in his right eye.

46. In addition, Mr. Maloney experienced sensitivity when looking at computer and television screens.

47. He therefore went to the UPMC Urgent care for evaluation, and was advised that he had the symptoms of a concussion.

48. In addition, Mr. Maloney had pain on his knee and shoulder, as well as bruising and redness on his knees, legs, chin, left arm, and right eye.

49. He was initially diagnosed with a left knee sprain at UPMC Urgent Care, which caused ongoing pain, "clicking" and "popping" sounds when it moved, and general feelings of instability.

50. Mr. Maloney was also diagnosed with a right shoulder sprain at UPMC Urgent

Care, following an x-ray. He is experiencing significant pain, stiffness and decreased range of motion since Officer Allman's use of force against him.

51. As a result of his ongoing pain and impairment in his left knee from Officer Allman's use of force against him, Mr. Maloney underwent an MRI of his left knee, which revealed a "horizontal tear" in the "posterior horn of the medial meniscus."

52. For two years prior to this incident, Mr. Maloney had been recovering from low back pain, associated with herniated and bulging discs, which was largely resolved.

53. However, after being taken to the ground by Officer Allman, his lower back has become extremely painful. He returned to his chiropractor on August 27, to begin additional treatment for his tightness and pain, which is more significant than at any point in the past year.

54. As a result of his back pain, he has been sleeping on ice packs.

55. Due to his physical pain in his back and left knee, as well as the concussion, Mr. Maloney's ability to work was significantly limited.

56. He was not able to make his deliveries, which require multiple stops carrying boxes of merchandise.

57. He was forced to cancel multiple meetings during the first week after the incident, due to his mental state, caused by the concussion.

58. Since the incident, Mr. Maloney has had vivid dreams related to being in crowds, and assaulted by the police.

59. Since the incident, Mr. Maloney has been questioned by numerous friends and acquaintances, many or most of whom assume Mr. Maloney must have done something wrong, to be knocked to the street and handcuffed by the police.

60. This incident has become a source of deep embarrassment, humiliation and

anxiety for Mr. Maloney, which was exacerbated when the incident began circulating on social media, prompting all manner of commentary on the incident from the general public.

## COUNT I
## VIOLATION OF THE FOURTH AMENDMENT - EXCESSIVE FORCE

*Sean Maloney*
*v.*
*Officer Anthony Allman*

61. The foregoing averments are incorporated herein by reference as if fully set forth herein.

62. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. Amend. IV.

63. A seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, (1989); *Ashton v. City of Uniontown*, 459 Fed. App'x 185, 189 (3d Cir. 2012) (stating that a "seizure occurs whenever a government actor terminates an individual's ability to move freely.").

64. Whether the force used to effect a seizure was reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

65. "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed,

and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

66. Officer Allman used excessive force when he seized Mr. Maloney, and subjected him to repeated shoves, culminating in a strike to the head and knocking Mr. Maloney to the ground, despite the fact that he was not resisting in any way, and was simply speaking with the officer in charge in an attempt to reunite with his daughter.

67. Officer Allman used excessive force when, after Mr. Maloney was knocked to the ground, he continued to apply unnecessary and excessive force, despite the fact that Mr. Maloney was not resisting, or even moving.

68. Officer Allman's conduct was wanton, reckless, dangerous and violated standards for police conduct.

69. As a result of Officer Allman's seizure of Mr. Maloney and other unlawful conduct, which violated the Fourth Amendment, Mr. Maloney has suffered:

    a. A concussion;

    b. A horizontal tear in the posterior horn of the medial meniscus of his left knee;

    c. Pain in his back;

    d. Pain in his right shoulder;

    e. Bruising on his head, face, arms, legs and knees;

    f. Night terrors;

    g. Flashbacks;

    h. Difficulty sleeping;

    i. Anxiety;

    j. Pain and suffering;

    k.   Mental anguish and upset;

    l.   Humiliation and embarrassment; and

    m.  Loss of life's pleasures.

WHEREFORE, Plaintiff Sean Maloney respectfully requests that judgment be entered in his favor and against Defendant Anthony Allman in an amount in excess of $75,000.00, along with all other relief allowed by law.

                              Respectfully submitted,

                              MIZNER LAW FIRM

                              By: /s/ John F. Mizner

                              PA Supreme Court ID 53323
                              John F. Mizner
                              jfm@miznerfirm.com

                              PA Supreme Court ID 322823
                              Joseph Caulfield
                              jpc@miznerfirm.com

                              311 West Sixth Street
                              Erie, Pennsylvania 16507
                              (814) 454-3889

                              *Attorney for the Plaintiff*